Copy mailed by chambers 4-17-23 DH

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
JESUS FERNANDEZ,                               :
                         Plaintiff,            :
                                               :            **OPINION AND ORDER**
v.                                             :
                                               :            20 CV 10287 (VB)
MARIA BADAMI, Physician's Assistant,           :
                         Defendant.            :
------------------------------------------------------------x

Briccetti, J.:

Plaintiff Jesus Fernandez, proceeding pro se and in forma pauperis, brings this action

pursuant to 42 U.S.C. § 1983 against Maria Badami ("P.A. Badami"), a physician's assistant

employed by the New York State Department of Corrections and Community Supervision

("DOCCS") at Downstate Correctional Facility ("Downstate").[1]  Liberally construed, the

amended complaint alleges plaintiff was forced to undergo a medical examination that violated

his right to free exercise of his religion under the First Amendment, his privacy rights under the

Fourth and Fourteenth Amendments, and his right to be free from cruel and unusual punishment

under the Eighth Amendment.

Now pending is P.A. Badami's motion to dismiss pursuant to Rules 12(b)(1) and

12(b)(6).  (Doc. #42).

For the following reasons, the motion to dismiss is GRANTED IN PART and DENIED

IN PART.

The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331.

---

[1]      Plaintiff also brought claims against Downstate Superintendent Robert Morton, which the
Court dismissed in an Opinion and Order dated February 14, 2022 (the "Morton Opinion"), for
failure to plead Superintendent Morton's personal involvement in the alleged constitutional
violations.  (Doc. #35).  As P.A. Badami had not yet been served, the Court did not address
plaintiff's claims against her.  (See id. at 1 n.1, 6 n.4).

**BACKGROUND**

For the purpose of ruling on the motion to dismiss, the Court accepts as true all well-pleaded factual allegations in the amended complaint and draws all reasonable inferences in plaintiff's favor, as summarized below.  Because plaintiff is proceeding pro se, the Court may also consider allegations made for the first time in plaintiff's opposition to the motion, to the extent they are consistent with those contained in the amended complaint.  See, e.g., Vlad-Berindan v. MTA N.Y.C. Transit, 2014 WL 6982929, at *6 (S.D.N.Y. Dec. 10, 2014).[2]

During the complained-of events, plaintiff, who alleges he is a practicing Muslim, was incarcerated at Downstate.

As part of Downstate's intake process, plaintiff was allegedly required to "undergo a health screening and physical examination."  (Doc. #5 ("AC") ¶ 2).[3]  Plaintiff claims he was escorted by a correction officer to a curtained examination room and directed to strip down to his underwear and socks.  According to plaintiff, the officer did not close the curtain, which enabled passing staff members and inmates to see plaintiff while he undressed.

Plaintiff alleges a "female doctor," later identified as P.A. Badami, entered the examination room after he undressed.  (AC ¶ 7).  Plaintiff allegedly attempted to refuse the examination, and requested, in the alternative, that he be examined by a male physician.  Plaintiff alleges P.A. Badami ignored his request, even though plaintiff informed her that his religious beliefs prohibited him "from exposing [his] body, or having any physical contact" with a

---

[2]     Plaintiff will be provided copies of all unpublished opinions cited in this decision.  See Lebron v. Sanders, 557 F.3d 76, 79 (2d Cir. 2009).

[3]     The Court refers to particular facts alleged by the paragraph numbers within the Statement of Claim, which begins on page 5 of the AC.  However, for other portions of the AC, the Court refers to page numbers automatically assigned by the Court's Electronic Case Filing system ("ECF __").

member of the opposite sex other than a spouse.  (Id.).  In addition, plaintiff alleges DOCCS

policy prohibits compelling an inmate "to undress for the physical examination, unless a

determination is made that [it] is medically required."  (Id. ¶ 10).  Plaintiff contends there was no

such justification here.

According to plaintiff, P.A. Badami began the intake examination by orally reviewing

plaintiff's medical history, with the "curtain door" open and within earshot of passing staff

members and inmates.  (AC ¶ 7).  Next, she physically examined plaintiff's eyes, ears, throat,

and chest.  P.A. Badami then allegedly directed plaintiff to stand and lower his boxers, after

which she "examine[d] the plaintiff's testicles, while having the plaintiff turn his head and

cough."  (Id. ¶ 9).  After the physical examination, P.A. Badami told plaintiff to get dressed.

Plaintiff does not allege he was examined by P.A. Badami on any other occasion, or that

he had any interactions with her beyond the intake examination.

Plaintiff seeks damages in the amount of $125,000.  (AC at ECF 4).

## DISCUSSION

I.    Standard of Review

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1)

when the district court lacks the statutory or constitutional power to adjudicate it."  Nike, Inc. v.

Already, LLC, 663 F.3d 89, 94 (2d Cir. 2011).[4]  "[F]ederal courts are courts of limited

jurisdiction and lack the power to disregard such limits as have been imposed by the Constitution

or Congress."  Durant, Nichols, Houston, Hodgson, & Cortese-Costa, P.C. v. Dupont, 565 F.3d

56, 62 (2d Cir. 2009) (quoting Owen Equipment & Erection Co. v. Kroger, 437 U.S. 365, 374

---

[4]    Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and alterations.

(1978)).  The party invoking the Court's jurisdiction bears the burden of establishing jurisdiction exists.  Conyers v. Rossides, 558 F.3d 137, 143 (2d Cir. 2009).

In deciding a Rule 12(b)(6) motion, the Court evaluates the sufficiency of the complaint under the "two-pronged approach" articulated by the Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).  First, a plaintiff's legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and thus are not sufficient to withstand a motion to dismiss.  Id. at 678; Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010).  Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  Ashcroft v. Iqbal, 556 U.S. at 679.

The Court must liberally construe submissions of pro se litigants and interpret them "to raise the strongest arguments that they suggest."  Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam) (internal quotation marks and citation omitted).  Applying the pleading rules permissively is particularly appropriate when, as here, a pro se plaintiff alleges civil rights violations.  Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008).  "Even in a pro se case, however . . . threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010).  Nor may the Court "invent factual allegations" plaintiff has not pleaded.  Id.

II.     Subject Matter Jurisdiction

P.A. Badami argues plaintiff's claims against her in her official capacity are barred by the Eleventh Amendment, and thus, the Court lacks subject matter jurisdiction over these claims.

The Court agrees.

State officers sued in their official capacities are immune from suit under the Eleventh Amendment absent a state's consent or a congressional abrogation of state sovereign immunity. Clark v. Schroeder, 847 F. App'x 92, 93–94 (2d Cir. 2021) (summary order), cert. denied, 142 S. Ct. 341 (2021). "New York has not waived its immunity, nor has Congress abrogated it." Li v. Lorenzo, 712 F. App'x 21, 22 (2d Cir. 2017) (summary order). Further, the Eleventh Amendment bars claims for monetary damages against defendants acting in their official capacities. See Gan v. City of New York, 996 F.2d 522, 529 (2d Cir. 1993).

Here, P.A. Badami is a DOCCS employee and, thus, a state official. Claims against her in her official capacity are therefore barred by the Eleventh Amendment and dismissed. See Robinson v. Tillotson, 2018 WL 4682226, at *8 (S.D.N.Y. Sept. 27, 2018).

III.   Failure to State a Claim

In the amended complaint, plaintiff asserts violations of his "Federally protected Constitutional Rights" (AC ¶ 2), which he lists as "Cruel and Unusual Punishment," "Invasion of Privacy," and "Deliberate Medical Indifference" in "Violation [of the] 8th Amendment," and "Disclosure of Medical Information [in] Violation [of the] 14th Amendment." (Id. at ECF 3). P.A. Badami's briefs specifically refer to the First, Fourth, and Eighth Amendments, as well as the Due Process Clause of the Fourteenth Amendment. (See Doc. #43 ("Def. Mem.") at 3–6; Doc. #45 ("Def. Reply") at 1–2). Thus, in ruling on P.A. Badami's motion to dismiss, the Court construes the amended complaint as bringing claims under all four Amendments.[5]

---

[5]   In the Morton Opinion, the Court did not construe the amended complaint as bringing a Fourteenth Amendment claim (see Doc. #35 at 5), because Superintendent Morton's briefs referred only to the First, Fourth, and Eighth Amendments (see Doc. #25 at 5–6; Doc. #30 at 3–4) and because, for the reasons stated below, even a liberal reading of plaintiff's allegations does not suggest he has a valid Fourteenth Amendment claim.

A.      First Amendment Claim

P.A. Badami argues plaintiff's First Amendment free exercise claim must be dismissed because he does not plausibly allege the examination substantially burdened his religious beliefs and because her conduct was motivated by a legitimate penological interest.[6]

The Court disagrees.

1.      Applicable Law

"Inmates clearly retain protections afforded by the First Amendment . . . including its directive that no law shall prohibit the free exercise of religion."  See O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987).  To state a free exercise claim, a plaintiff "must show at the threshold" that the complained-of conduct "burdens his sincerely held religious beliefs," Brandon v. Kinter, 938 F.3d 21, 32 (2d Cir. 2019), by "put[ting] substantial pressure on an adherent to modify his behavior and to violate his beliefs.'"  Jolly v. Coughlin, 76 F.3d 468, 477 (2d Cir. 1996) (citing Thomas v. Review Bd. of the Ind. Emp't Sec. Div., 450 U.S. 707, 718 (1981)).[7]

An inmate's "right to practice his religion is, however, not absolute."  Salahuddin v. Coughlin, 993 F.2d 306, 308 (2d Cir. 1993).  Prisons may restrict religious exercise so long as such restrictions are "reasonably related to legitimate penological interests."  O'Lone v. Estate of Shabazz, 482 U.S. at 349.  Thus, even if a plaintiff can establish a defendant burdened his

---

[6]      For purposes of this motion, P.A. Badami does not dispute the sincerity of plaintiff's religious beliefs.

[7]      Prior cases required a plaintiff to show a "substantial" burden on his religious beliefs. Brandon v. Kinter, 938 F.3d at 32.  However, the Second Circuit "has not yet decided whether the substantial burden requirement remains good law after" a Supreme Court decision "took issue with the premise that courts can differentiate between substantial and insubstantial burdens."  Id. (citing Emp't Div. v. Smith, 494 U.S. 872, 887 (1990)).

religious beliefs, he cannot state a free exercise claim if the defendant had "legitimate

penological justifications" for burdening the plaintiff's free exercise.  Salahuddin v. Goord, 467

F.3d 263, 275 (2d Cir. 2006).  In evaluating whether the disputed conduct was motivated by

legitimate penological interests, courts consider:

> [i] whether the challenged regulation or official action has a valid, rational
> connection to a legitimate governmental objective; [ii] whether prisoners have
> alternative means of exercising the burdened right; [iii] the impact on guards,
> inmates, and prison resources of accommodating the right; and [iv] the existence
> of alternative means of facilitating exercise of the right that have only a de
> minimis adverse effect on valid penological interests.

Id. at 274 (citing Turner v. Safley, 482 U.S. 78, 90–91 (1987)).  Importantly, a defendant must

show she "actually had, not just could have had, a legitimate reason for burdening protected

activity."  Id. at 277 ("[O]f course, prison officials have a duty to prevent threats to other

prisoners' safety. But the Supreme Court requires the government to close the circle—prison

officials must have been pursuing the interest in inmate safety when limiting [the plaintiff's]

religious exercise.").

        2.    Application

Plaintiff's allegations are sufficient, at this early stage, to state a free exercise claim.

First, because plaintiff alleges P.A. Badami required him to expose his private body parts

to her and that such nudity violated his religious beliefs, he has met the "not particularly onerous

task" of establishing a substantial burden on his religious beliefs.  Brandon v. Kinter, 938 F.3d

21, 32 (2d Cir. 2019); see also Woodward v. Perez, 2014 WL 4276416, at *5 (S.D.N.Y. Aug. 29,

2014) (inmate sufficiently pleaded substantial burden when he alleged being forced to "shower[ ]

in the presence of a female guard violated a central tenet of his [Muslim] religion" ).

Second, the Court cannot, at this stage, conclude that the alleged burden on plaintiff's

religious beliefs was "motivated by a legitimate penological interest."  Salahuddin v. Goord, 467

F.3d at 276.  To be sure, DOCCS has a legitimate interest in conducting routine medical examinations of inmates, including examinations involving brief nudity, "to assess their health, control the spread of germs, provide incarcerated individuals necessary treatment, and to determine if more extensive examinations are needed."  (Def. Mem. at 4).  But the amended complaint does not reflect, nor does P.A. Badami identify, a legitimate penological interest behind her alleged conduct here, i.e., refusing to grant plaintiff's request to be examined by a male medical professional or otherwise accommodate his free exercise right.  See Salahuddin v. Goord, 467 F.3d at 277 (vacating summary judgment when the defendants failed to offer evidence that denying the plaintiff "religious exercise while in disciplinary keeplock . . . was actually viewed as preventing threats to inmate safety").  Moreover, it does not appear that plaintiff had "alternative means of exercising the burdened right," beyond asking P.A. Badami to accommodate his beliefs—a request P.A. Badami allegedly ignored.  Id. at 274.

The Court is not persuaded that a recent decision cited by P.A. Badami, Loving v. Morton, 2022 WL 2971989 (S.D.N.Y. July 27, 2022), justifies dismissing plaintiff's claims at this stage.  (Cf. Def. Reply at 3).  Although that case also involved a medical examination of a Muslim inmate, the plaintiff did not claim that he was required to expose his genitals, or "expressly allege that he was ever viewed by" a member of the opposite sex.  Loving v. Morton, 2022 WL 2971989 at *8 (noting the complaint's use of "he or she" to refer to the medical professional).  In addition, the Court concluded the plaintiff, by failing to respond to the defendant's assertion that the examination was motivated by legitimate penological interests, had "effectively concede[d] this argument."  Id. at *7.  As such, the plaintiff could not state a claim under the First or Fourth Amendments.  See id. at *7–8.  Importantly, however, the court noted that "additional allegations regarding the context of" the medical examination could be sufficient

to state claims under either amendment, and thus dismissed the plaintiff's claims without prejudice. Id. at n.9, 11.

Conversely, here, plaintiff expressly alleges his genitals were examined by a female medical professional (see AC ¶¶ 7, 9) and that "there was no need for the plaintiff to be undressed" for the examination.  (Id. ¶ 20 (suggesting less intrusive means to assess the plaintiff's heart, lungs, and chest, and to check for hernias)).

Accordingly, plaintiff has plausibly alleged a free exercise claim.

B.      Fourth Amendment Claim

P.A. Badami argues plaintiff does not plausibly allege a violation of his Fourth Amendment privacy rights because the complained-of conduct was limited to a single, brief examination.

The Court disagrees.

1.      Applicable Law

The Fourth Amendment "protects individual privacy against certain kinds of governmental intrusion." Katz v. United States, 389 U.S. 347, 350 (1967).  The Fourth Amendment rights of inmates are curtailed, but not forfeited, "by reason of their conviction and confinement in prison." Bell v. Wolfish, 441 U.S. 520, 559 (1979).  As relevant here, it is well established that "inmates retain a limited right to bodily privacy under the Fourth Amendment." Harris v. Miller, 818 F.3d 49, 57 (2d Cir. 2016), which is implicated by an "involuntary viewing of private parts of [an inmate's] body by members of the opposite sex." Holland v. City of New York, 197 F. Supp. 3d 529, 543 (S.D.N.Y. 2016) (quoting Forts v. Ward, 621 F.2d 1210, 1217 (2d Cir. 1980)).

"To state a cognizable privacy claim, an inmate must allege that (1) he exhibited an actual, subjective expectation of bodily privacy, and (2) prison officials lacked sufficient justification to intrude on the inmate's Fourth Amendment rights." Telesford v. Annucci, 693 F. App'x. 1, 3 (2d Cir. 2017) (summary order).

As "the test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application," the Supreme Court has identified four factors that courts "must consider" in determining whether an intrusion on an inmate's bodily privacy was justified under the circumstances. Bell v. Wolfish, 441 U.S. at 559. The so-called "Bell factors" are "[1] the scope of the particular intrusion, [2] the manner in which it is conducted, [3] the justification for initiating it, and (iv) the place in which it is conducted." Harris v. Miller, 818 F.3d at 58 (quoting Bell v. Wolfish, 441 U.S. at 559).

                    2.    Application

As an initial matter, the medical examination here allegedly involved an involuntary inspection of plaintiff's testicles, which constitutes a "search" under the Fourth Amendment. See Loving v. Morton, 2022 WL 2971989, at *7–8 (characterizing medical professional's inspection of inmate's naked body as a "strip search"). Moreover, plaintiff's allegations regarding the search are sufficient, at this early stage, to state a cognizable privacy claim.

First, plaintiff plausibly alleges—and P.A. Badami does not appear to dispute—that he "exhibited an actual, subjective expectation of bodily privacy" when he attempted to refuse the examination. Harris v. Miller, 818 F.3d at 58.

Second, applying the Bell factors, and accepting the allegations of the amended complaint as true, the Court cannot conclude P.A. Badami had a sufficient justification for the alleged intrusion on plaintiff's bodily privacy. See Harris v. Miller, 818 F.3d at 58.

a.      Scope of the Intrusion

The first <u>Bell</u> factor, the scope of the search, weighs strongly against finding the alleged

intrusion reasonable.

When evaluating the scope of a search, courts consider "the type of search and the person

conducting the search," both of which are "independently relevant."  <u>Harris v. Miller</u>, 818 F.3d at

58.  "There are at least three types of searches that implicate an inmate's right to bodily privacy":

(i) a "strip search," which "generally refers to an inspection of the naked individual, without any

scrutiny of the subject's body cavities"; (ii) a "visual body cavity search," which includes "visual

inspection of the anal and genital areas"; and (iii) a "manual body cavity search," which

"includes some degree of touching or probing of the body cavities."  <u>Id</u>.  A search "that involves

a stranger peering without consent at a naked individual, and in particular at the most private

portions of that person's body, is a serious invasion" of bodily privacy, "[r]egardless of who

performs the search."  <u>Id</u>.

As to the person conducting the search, "it is generally considered a greater invasion to

have one's naked body viewed by a member of the opposite sex."  <u>Harris v. Miller</u>, 818 F.3d at

59.  "For this reason, courts throughout the country have universally frowned upon cross-gender

strip searches in the absence of an emergency or exigent circumstances."  <u>Id</u>.

Here, although it is unclear whether P.A. Badami touched plaintiff's testicles, plaintiff

does plausibly allege she visually inspected them.  Thus, at a minimum, plaintiff claims he was

subjected to a visual body cavity search.  <u>See Harris v. Miller</u>, 818 F.3d at 59 (visual body cavity

search when "a male officer visually inspected [the plaintiff's] genitalia").  Moreover, this search

was conducted by a member of the opposite sex, and was therefore "extraordinarily intrusive."

<u>Harris v. Miller</u>, 818 F.3d at 59 (quoting <u>Byrd v. Maricopa Cty. Sheriff's Dep't</u>, 629 F.3d 1135,

1142 (9th Cir. 2011) (en banc)).  And although "most people . . . have a special sense of privacy in their genitals, and involuntary exposure of them in the presence of people of the opposite sex may be especially demeaning and humiliating," plaintiff's religious beliefs arguably render the alleged search here even more intrusive.  See id. (quoting Lee v. Downs, 641 F.2d 1117, 1119 (4th Cir. 1981)); c.f. Smith v. Russell, 2007 WL 274756, at *2 (N.D.N.Y. Jan. 29, 2007) (granting summary judgment to female officer when the Muslim inmate's "genitals were always covered, and he was not touched by any officer").

    b.    Manner in Which the Search Was Conducted

    With respect to the second Bell factor, plaintiff has not alleged facts showing the search was conducted in a "violent and forceful," rather than professional, manner.  Harris v. Miller, 818 F.3d at 59–60 ("A strip search conducted in a professional manner is more reasonable than one that is not.").  However, because courts often "recognize [ ] the frightening and humiliating invasion occasioned by a strip search, even when conducted with all due courtesy"—especially when the search is conducted by a member of the opposite sex—the second Bell factor weighs only slightly toward a conclusion that the alleged search was reasonable.  Id. at 60.

    c.    Justification for the Search

    With respect to the third Bell factor, the Second Circuit has stated that "it is difficult, if not impossible, for courts to determine the reasonableness of a visual body cavity search without record evidence" supporting the defendant's purported justification for the search.  See Harris v. Miller, 818 F.3d at 60–61.  At this early stage, the Court cannot conclude that the third Bell factor weighs toward finding the alleged search reasonable.

    Here, notwithstanding the prison's legitimate interests in assessing an inmate's health and controlling the spread of germs, the facts as alleged do not suggest such interests justified

compelling plaintiff to expose his genitals to a female medical provider.  Byrd v. Maricopa Cty.
Sheriff's Dep't, 629 F.3d at 1143 ("[A]lthough valid reasons to search the inmates existed
generally, there was no justification given for conducting a cross-gender strip search.").  There
are no allegations indicating male medical providers were unavailable to conduct the
examination, and P.A. Badami does not explain why she denied plaintiff's request to be
examined by a male provider.  Accordingly, in the apparent "absence of an emergency or exigent
circumstances," the Court cannot, at this stage, conclude the alleged intrusion was justified.
Harris v. Miller, 818 F.3d at 59; see also Byrd v. Maricopa Cty. Sheriff's Dep't, 629 F.3d at
1137 n.2, 1142 (noting that officer's trial testimony "did not specifically address the availability
of the male officers to conduct the search" of the male plaintiff, ruling that "the cross-gender
strip search of [the plaintiff] was unreasonable as a matter of law, and reversing district court
decision to the contrary).

d.   Location of the Search

Finally, with respect to the fourth Bell factor, plaintiff's allegation that the examination
was conducted in a curtained examination room makes the search here at least "more reasonable"
than one conducted in a more public area, like a hallway or common room.  Harris v. Miller, 818
F.3d at 62.  On the other hand, P.A. Badami allegedly left the curtain "door" open, and therefore
staff member and inmates "passing by were clearly able to see into the examination room."  (AC
¶¶ 6–7).  As such, the fourth Bell factor weighs, only slightly, toward finding the alleged search
reasonable.

In sum, based on the facts as alleged and drawing all reasonable inferences in plaintiff's
favor, the Bell factors suggest "the need for the particular search" did not outweigh the highly

13

intrusive invasion of plaintiff's bodily privacy "that the search entail[ed]."  Harris v. Miller, 818 F.3d at 58.

Accordingly, plaintiff has plausibly alleged a Fourth Amendment privacy claim.

C.      Eighth Amendment Claim

P.A. Badami argues plaintiff fails to state an Eighth Amendment claim for cruel and unusual punishment because he has not alleged a sufficiently serious deprivation and failed to plead the requisite mens rea.

The Court agrees plaintiff's claims must be dismissed for failure to plead a sufficiently serious deprivation.[8]

1.      Applicable Law

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments."  U.S. Const. amend. VIII.  "Under certain limited circumstances, the manner in which a search is conducted may give rise to an Eighth Amendment claim."  George v. City of New York, 2013 WL 5943206, at *9 (S.D.N.Y. Nov. 6, 2013).

To state an Eighth Amendment claim, a prisoner must plausibly allege two components, one objective and one subjective.  See Harris v. Miller, 818 F.3d at 63.

To plead the objective component of an Eighth Amendment claim, a plaintiff must allege the conduct was "objectively harmful enough to establish a constitutional violation," Hudson v.

---

[8]      To the extent plaintiff also asserts an Eighth Amendment claim for deliberate indifference to serious medical needs (see AC at ECF 3), his claim must be dismissed on the same grounds. Plaintiff has not alleged he suffered any medical conditions for which P.A. Badami failed to provide adequate care, let alone "a condition of urgency, one that may produce death, degeneration, or extreme pain."  Hill v. Curcione, 657 F.3d 116, 122 (2d Cir. 2011); cf. K.A. v. City of New York, 413 F. Supp. 3d 282, 297–98 (S.D.N.Y. 2019) (plaintiffs stated deliberate indifference claim when defendants' repeated denials of plaintiffs' requests for female healthcare professionals and/or chaperones allegedly "resulted in sexual abuse[, ] exacerbated Plaintiffs' pre-existing medical conditions," and caused "additional pain and suffering").

McMillian, 503 U.S. 1, 2 (1992), or otherwise "sufficiently serious to reach constitutional

dimensions." Crawford v. Cuomo, 796 F.3d 252, 256 (2d Cir. 2015).  The objective component

is satisfied when a prison official acts in a way that is "repugnant to the conscience of mankind,"

meaning that the official's actions "are 'incompatible with evolving standards of decency' or

involve 'the unnecessary and wanton infliction of pain.'" Id. (quoting Hudson v. McMillian, 503

U.S. at 9–10).  "Even where inmates allege aggressive or inappropriate behavior during strip

searches, courts are reluctant to find that such activity rises to the objectively serious level of an

Eighth Amendment violation." Vaughn v. Strickland, 2013 WL 3481413, at *3 (S.D.N.Y. July

11, 2013).

 To plead the subjective component, a plaintiff must allege the prison official acted with a

"sufficiently culpable state of mind," which may be "shown by actions" reflecting "malice" or

"wantonness in light of the particular circumstances surrounding the challenged conduct."

Harris v. Miller, 818 F.3d at 63.

 2. Application

 P.A. Badami's conduct, as alleged, was not sufficiently serious to establish the objective

component of an Eighth Amendment claim.[9]

 Notwithstanding the Court's conclusion that plaintiff plausibly alleged P.A. Badami

unreasonably invaded his bodily privacy, plaintiff's allegations do not support a plausible

inference that her conduct was "repugnant to the conscience of mankind." Crawford v. Cuomo,

796 F.3d at 256–57 ("severe or repetitive sexual abuse of an inmate by a prison officer can be

objectively, sufficiently serious enough to constitute an Eighth Amendment violation"); see also

---

[9] As plaintiff failed to plead the objective component of an Eighth Amendment claim, the
Court need not consider whether he pleaded the subjective component.

Green v. Martin, 224 F. Supp. 3d 154, 169 (D. Conn. 2016) (concluding inmate's allegations

concerning three strip searches stated a claim under the Fourth Amendment but not under the

Eighth Amendment).

Indeed, "allegations of far more serious misconduct by corrections officers have

consistently been held insufficiently serious to state an Eighth Amendment claim." George v.

City of New York, 2013 WL 5943206, at *10 (collecting cases); see also Boddie v. Schneider,

105 F.3d 857, 861 (2d Cir. 1997) (plaintiff's allegations of multiple instances of "despicable"

sexual harassment and nonconsensual touching did not state an Eighth Amendment claim).

Accordingly, plaintiff's Eighth Amendment claims must be dismissed.

D.      Fourteenth Amendment Claim

P.A. Badami argues plaintiff does not state a substantive due process claim under the

Fourteenth Amendment for disclosure of medical information because he does not plausibly

allege his medical information was overheard, and because even if it was overheard, the

disclosure was not egregious.

The Court agrees plaintiff's substantive due process claim must be dismissed because,

even crediting his allegations as true, any disclosure was not sufficiently egregious to amount to

a constitutional violation.

1.      Applicable Law

"Substantive due process rights safeguard persons against the government's exercise of

power without any reasonable justification in the service of a legitimate governmental

objective." Hurd v. Fredenburgh, 984 F.3d 1075, 1087 (2d Cir. 2021), cert. denied, 142 S. Ct.

109 (2021).  To plead a substantive due process claim, the plaintiff must first "identify the

constitutional right at stake." Id.  Second, "the plaintiff must demonstrate that the state action

was so egregious, so outrageous, that it may fairly be said to shock the contemporary

conscience." Id. (quoting Southerland v. City of New York, 680 F.3d 127, 151–52 (2d Cir.

2012)).

Inmates retain a limited "right to maintain the confidentiality of previously undisclosed

medical information." Powell v. Schriver, 175 F.3d 107, 112 (2d Cir. 1999).  When evaluating a

substantive due process claim for disclosure of medical information, courts "give decisive

weight" to whether the official's conduct was "reasonably related to legitimate penological

interests." Hancock v. Cnty. of Rensselaer, 882 F.3d 58, 66 n.3 (2d Cir. 2018).  In considering

whether the government's interest is sufficient "to override" the inmate's privacy interest, the

court evaluates "[t]he strength of [the plaintiff's] privacy interest" in the medical information at

issue, including "the seriousness of the condition and the stigma associated with it." Id. at 67.

2.     Application

Here, plaintiff alleges P.A. Badami discussed his "health and medical history," and that

"[t]his conversation was able to be heard by others in the adjoining room, or those passing by, as

it was just a curtain partition was with no ceiling, door, or walls."  (AC ¶¶ 7–8).  Plaintiff also

alleges he saw other inmates and prison staff "passing by in the hallway" outside the

examination room.  (Id. ¶ 6).  Drawing all reasonable inferences in plaintiff's favor, plaintiff

sufficiently alleged nearby inmates and/or staff overheard his medical information.

However, plaintiff does not allege he suffers from a serious or stigmatizing medical

condition, and therefore has a particularly weak privacy interest in the allegedly disclosed

information.  See Hancock v. Cnty. of Rensselaer, 882 F.3d at 67.  Moreover, plaintiff's

allegations do not support a plausible inference that P.A. Badami's oral review of plaintiff's

medical history was unrelated to legitimate penological interests, let alone that her conduct was

17

"so egregious" that it would "shock the contemporary conscience." Hurd v. Fredenburgh, 984

F.3d at 1087; cf. Powell v. Schriver, 175 F.3d at 112 ("gratuitous disclosure" of an inmate's

transgender status "as humor or gossip" was "not reasonably related to a legitimate penological

interest").

Accordingly, plaintiff's substantive due process claim must be dismissed.

IV.     Qualified Immunity

P.A. Badami argues she is protected by qualified immunity because plaintiff does not

plausibly allege the specific conduct here violated clearly established constitutional rights.

The Court disagrees with respect to plaintiff's claims under the First and Fourth

Amendments.  The Court need not consider whether qualified immunity applies with respect to

plaintiff's claims under the Eighth and Fourteenth Amendment, which must be dismissed for

failure to state a claim.

A.      Applicable Law

Qualified immunity shields government officials whose "conduct does not violate clearly

established statutory or constitutional rights of which a reasonable person would have known."

Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  To evaluate an assertion of qualified immunity,

a court "must determine whether any constitutional right that the defendant violated 'was clearly

established at the time of the alleged violation.'"  Peoples v. Leon, 63 F.4th 132, 141 (2d Cir.

2023) (quoting Wilson v. Layne, 526 U.S. 603, 609 (1999)).  "A right is clearly established if the

contours of the right are sufficiently clear that a reasonable official would understand that what

[they are] doing violates that right."  Id.; see also Ford v. McGinnis, 352 F.3d 582, 597 (2d Cir.

2003) ("[C]ourts need not have ruled in favor of a prisoner under precisely the same factual

circumstance in order for the right to be clearly established").

"[A] defendant asserting a qualified immunity defense on a motion to dismiss faces a formidable hurdle and is usually not successful."  Barnett v. Mount Vernon Police Dep't, 523 F. App'x 811, 813 (2d Cir. 2013) (summary order).  "For qualified immunity to bar suit at the motion to dismiss stage, 'not only must the facts supporting the defense appear on the face of the complaint, but, as with all Rule 12(b)(6) motions, the motion may be granted only where it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief.'"  Woodward v. Perez, 2014 WL 4276416, at *7 (S.D.N.Y. Aug. 29, 2014) (quoting McKenna v. Wright, 386 F.3d 432, 436 (2d Cir. 2004)).  "For these reasons, a motion to dismiss is a mismatch for immunity and almost always a bad ground of dismissal."  Barnett v. Mount Vernon Police Dep't, 523 F. App'x at 813.

      B.     Application

For the reasons stated above, plaintiff plausibly alleges P.A. Badami violated his rights under the First and Fourth Amendments.  Moreover, "the contours of [both] right[s plaintiff alleges were violated] are sufficiently clear that a reasonable official would understand that" compelling a Muslim inmate to expose his genitals to a member of the opposite sex, without a legitimate penological justification, "violates [those] right[s]."  Peoples v. Leon, 63 F.4th at 141. Accepting plaintiff's allegations as true and drawing all reasonable inferences in plaintiff's favor, the Court cannot conclude P.A. Badami had an objectively reasonable belief that her actions did not violate plaintiff's rights under the First and Fourth Amendments.

At the time of the alleged violation, longstanding Supreme Court and Second Circuit authority "clearly established . . . that prison officials may not substantially burden inmates' right to religious exercise without some justification."  Salahuddin v. Goord, 467 F.3d at 275–76.  And both the Supreme Court and Second Circuit have held that prison officials may not intrude on an

inmate's Fourth Amendment privacy rights without "sufficient justification" for the intrusion.

Harris v. Miller, 818 F.3d at 57.  Indeed, as the Second Circuit noted in Harris v. Miller, "courts throughout the country have universally frowned upon cross-gender strip searches in the absence of an emergency or exigent circumstances."  Id. at 59 (citing decisions by the Fourth, Seventh, Ninth, and Eleventh Circuits).

At this early stage, the Court cannot conclude "that it would be objectively reasonable for [P.A. Badami] to believe" there was a legitimate penological justification to examine plaintiff's genitals over his objection.  Salahuddin v. Goord, 467 F.3d at 273.  Although there may have been circumstances that made it objectively reasonable for P.A. Badami to believe her conduct did not violate plaintiff's constitutional rights, those circumstances are not apparent from the face of the complaint.  See id. at 275, 277–278 (vacating summary judgment as to claims involving access to religious services and religious meals "because it was clearly established at the time of the alleged violations that prison officials may not substantially burden inmates' right to religious exercise without some justification," and the court could not "say, as a matter of law, that the conduct described by the factual allegations would be reasonably perceived as constitutional.").

Accordingly, at this early stage, plaintiff's First and Fourth Amendment claims cannot be dismissed on qualified immunity grounds.

20

**CONCLUSION**

The motion to dismiss is GRANTED IN PART and DENIED IN PART.

Plaintiff's First and Fourth Amendment claims against P.A. Badami, in her individual capacity, may proceed.  All other claims are dismissed.

Defendant shall file an answer to the amended complaint by May 1, 2023.

By separate order, the Court will schedule an initial conference.

The Clerk is instructed to terminate the motion (Doc. #42).

Dated: April 17, 2023
       White Plains, NY

                              SO ORDERED:


                              _____
                              Vincent L. Briccetti
                              United States District Judge

21